UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOSE RICARDO MONGE AVILES,

                Petitioner,

    v.

JESSICA SAGE, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-00301

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner Jose Ricardo Monge Aviles ("Aviles") brings this petition for writ of habeas corpus. (Doc. 1). On February 6, 2026, Aviles filed the instant petition, requesting that Respondents Kristi Noem, Todd Lyons, Michael Rose, Pamela Bondi, and Jessica Sage ("Sage")[1] release him from custody at the Lewisburg Federal Correction Institution ("FCI Lewisburg"). (Doc. 1, at 15). Aviles also requests that the Court enjoin the government from removing him to any third country, including Mexico, without first providing him with notice

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Sage, Warden of FCI Lewisburg. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Aviles is detained at FCI Lewisburg, Sage is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Kristi Noem, Todd Lyons, Michael Rose, and Pamela Bondi are **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Aviles on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

and adequate opportunity to apply for deferral of removal as to that country. (Doc. 1, at 14).
On February 18, 2026, Sage filed a response to Aviles's petition. (Doc. 6). On March 5, 2025,
Aviles filed a traverse. (Doc. 8). For the following reasons, Aviles's petition (Doc. 1) is
**DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Aviles's petition, Sage's response, and the
exhibits thereto. (Doc. 1; Doc. 6). Aviles was born in El Salvador. (Doc. 1, ¶ 1). He resides in
Pennsylvania and is currently detained at FCI Lewisburg. (Doc. 1, ¶ 5). Aviles became a
lawful permanent resident of the United States on July 18, 1989. (Doc. 1, ¶ 28). In January
2002, the Lackawanna Court of Common Pleas convicted Aviles for aggravated indecent
assault and attempt to commit aggravated indecent assault, and the court sentenced him to
four years' incarceration. (Doc. 1, ¶ 29).

On October 24, 2014, the Department of Homeland Security ("DHS") served Aviles
with a Notice to Appear and detained Aviles during his removal proceedings. (Doc. 1, ¶ 30).
The Immigration Judge ("IJ") ordered Aviles removed to El Salvador and granted Aviles's
application for deferral of removal under the Convention Against Torture ("CAT"), finding
that it was more likely than not that Aviles would face torture in El Salvador. (Doc. 1, ¶ 31).
DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (Doc. 6, at 6).
On September 30, 2015, the BIA dismissed the appeal and remanded to allow "DHS to
complete relevant background examinations and investigations." (Doc. 6-3, at 6).

Immigration and Customs Enforcement ("ICE") continuously held Aviles in custody
while it made efforts to deport him to a country other than El Salvador; those efforts were
unsuccessful. (Doc. 1, ¶ 33). Aviles remained in ICE custody until April 6, 2016, at which

time the government determined that removal was not significantly likely in the reasonably foreseeable future. (Doc. 1, ¶ 33). ICE then released Aviles from custody on an order of supervision. (Doc. 1, ¶ 33). Under the order of supervision, ICE required Aviles to appear for an ICE check-in one to two times per year. (Doc. 1, ¶ 34). Aviles abided by the order of supervision and terms of his release without incident from April 2016 to December 2025. (Doc. 1, ¶ 34).

On December 23, 2025, during one of Aviles's annual ICE check-ins, ICE arrested and detained Aviles. (Doc. 1, ¶ 36). ICE then issued Aviles a notice of revocation of his order of supervision. (Doc. 1, ¶ 36). In the notice, ICE stated that circumstances had changed and that ICE determined that there is a significant likelihood of Aviles's removal in the reasonably foreseeable future. (Doc. 6-4, at 1). The same day, ICE issued Aviles a notice of removal to Mexico, a country which Aviles has no connection to. (Doc. 1, ¶¶ 38, 41). On January 29, 2025, Aviles requested a reasonable fear interview ("RFI") because he fears that Mexican authorities will deport him to El Salvador. (Doc. 1, ¶ 40). As of March 5, 2026, immigration authorities had not scheduled Aviles's requested RFI. (Doc. 8, at 3).

## II. LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in

3

only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

## III.    DISCUSSION

### A.    THE COURT DOES NOT HAVE JURISDICTION TO ENJOIN AVILES'S REMOVAL.

Aviles asks the Court to enjoin the government from removing him to any third country, including Mexico, until he has adequate opportunity to apply for deferral of removal, including an RFI and any subsequent IJ review. (Doc. 1, at 14). The government contends that the Court lacks jurisdiction because section 1252(g) of the Immigration and Nationality Act ("INA") provides that district courts do not have jurisdiction to hear claims arising from the Attorney General's execution of a noncitizen's removal order. (Doc. 6, at 8). The government reasons that Aviles's claim for relief from third country removal is not a "now-or-never" claim and it can be meaningfully reviewed in a petition for review of a final order of removal ("PFR"). (Doc. 6, at 10-11). Aviles counters that the Court has jurisdiction because

4

he does not contest his removability and only seeks an RFI, which is collateral to the removal order and cannot be considered on a PFR. (Doc. 8 at 7-8).

28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). However, sections 1252(g), 1252(b)(9), and 1252(a) of the INA limit the authority of federal courts to grant writs of habeas corpus in immigration matters. *Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018). 8 U.S.C. § 1252(g) and § 1252(b)(9) are applicable to Aviles's claim for relief from third country removal.

Section 1252 of the INA provides for the judicial review of orders of removal. 8 U.S.C. § 1252. Section 1252(g) specifically provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) strips district courts of jurisdiction to review the Attorney General's decision to execute a removal order or actions taken to execute a removal order. *Tazu v. Attorney General United States*, 975 F.3d 292, 298 (3d Cir. 2020).

Section 1252(g) can overlap with § 1252(b)(9), which states that if a "claim aris[es] from any action taken or proceedings brought to remove an alien," then the review of that claim "shall be available only in judicial review of a final order." *Tazu*, 975 F.3d at 299 (citing *Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483-84 (1999)). Stated differently, § 1252(b)(9), or the "zipper-clause," channels claims arising from actions taken to remove a noncitizen into a PFR. *Nasrallah v. Barr*, 590 U.S. 573, 579 (2020); *Tazu*, 975 F.3d at 299. The

purpose of this "zipper clause" is to "funnel 'most claims that even relate to removal' into a single proceeding." *Tazu*, 975 F.3d at 296 (quoting *E.O.H.C. v. Secretary U.S. Dept. Homeland Sec.*, 950 F.3d 177,182 (3d Cir. 2020)). 8 U.S.C. § 1252(b)(2) provides that such a single proceeding brought through a PFR "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *See Nasrallah*, 590 U.S. at 579 (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 n. 37 (2001)) ("a noncitizen's various challenges arising from the removal proceeding must be 'consolidated in a petition for review and considered by the court of appeals'").

Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit reaffirmed that the INA strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a PFR. However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74. Courts in the Third Circuit have found that review of a third country removal notice, issued to a noncitizen with a deferral of removal to their country of origin under the CAT, does not involve "now or never" questions of law and must be channeled into a PFR. *T.A. v. Sage*, No. 3:26-CV-00609, 2026 WL 448807, at *7 (M.D. Pa. Feb. 17, 2026); *Salih v. Hoover*, No. 4:25-CV-02407, 2026 WL 161773, at *1-*2 (M.D. Pa. Jan. 21, 2026); *Khachatryan v. Oddo*, 3:25-CV-00546, Doc. 15, (W.D. Pa. Jan. 23, 2026).

In *T.A. v. Sage*, No. 3:26-CV-00609, 2026 WL 448807, at *7 (M.D. Pa. Feb. 17, 2026), the court laid out three avenues through which a petitioner with a notice of removal to a third country could seek relief outside the writ of habeas. One avenue for review available to

petitioners with notice of removal to a third country is moving to reopen their administrative proceedings, providing the opportunity to litigate fear-based claims as to the third country and to ultimately seek judicial review through a PFR. *T.A.*, 2026 WL 448807, at *7. A second avenue available to petitioners with notice of removal to a third country is requesting a reasonable fear interview. *T.A.*, 2026 WL 448807, at *7. If the fear determination is negative, the government's guidance contemplates reopening removal proceedings. *T.A.*, 2026 WL 448807, at *7. A third avenue available to petitioners with notice of removal to a third country is to argue the principles of equitable tolling and pursue a PFR before the Third Circuit on the order deferring removal to the petitioner's country of origin.[2] *T.A.*, 2026 WL 448807, at *7. These three alternative avenues for review outside the writ of habeas, demonstrate that review of notice of removal to a third country does not involve collateral, "now or never" legal questions. *See T.A.*, 2026 WL 448807, at *7.

Aviles's request for the Court to enjoin removal to a third country until he receives an RFI and can apply for deferral of removal is intertwined with the removal process. While an IJ ordered Aviles's removal in 2015, the RFI Aviles presently seeks is still a removal related activity because it directly concerns the execution of his removal order. (Doc. 1, ¶ 31); *see T.A.*, 2026 WL 448807, at *5-*6 (finding the third country designation is an action taken to effectuate removal and that due process challenges associated with a third country designation are bound up with the removal process); *Salih*, 2026 WL 161773, at *2 (quoting *Tonfack v.*

---

[2] The INA provides that a PFR "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). In *Riley v. Bondi*, 606 U.S. 259, 273-74 (2025), the Supreme Court held that the 30-day PFR deadline is a non-jurisdictional claim processing rule. *See T.A.*, 2026 WL 448807, at *7. "[N]onjurisdictional limitations periods are presumptively subject to equitable tolling," potentially allowing a PFR to proceed after the 30-day filing deadline. *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 208-09 (2022); *see T.A.*, 2026 WL 448807, at *7.

*Att'y Gen. U.S.*, 580 F. App'x 79, 82 (3d Cir. 2014)) ("where an individual argues that a country 'is not a proper country of removal,' such an argument relates to the removal process, and it is proper for a district court to 'dismiss [such a petition] for lack of jurisdiction'"). As such, a "challenge to [a] third-country removal is not collateral to the removal process." *T.A.*, 2026 WL 448807 at * 5; *Salih*, 2026 WL 161773, at *2 (finding a challenge to a third country removal plainly relates to the underlying order of removal). Third country designation is an action taken to effectuate removal, and due process challenges to the adequacy of the fear-screening process related to that designation is "bound up" with the execution of a removal order. *T.A.*, 2026 WL 448807 at * 5 (citing *Tazu*, 975 F.3d at 299); *Salih*, 2026 WL 161773, at *2. The government's designation of Mexico for Aviles's third-country removal is so bound up with the execution of his removal order that §1252 strips this court of subject-matter jurisdiction to hear such a claim.

Furthermore, there remain avenues open for Aviles to request and receive an RFI on removal to Mexico. Aviles already sought relief by directly requesting an RFI with ICE. (Doc. 1, ¶ 40; Doc. 1-5). Aviles could also reopen his removal proceedings or file a PFR with the Third Circuit challenging his removal order. *See T.A.*, 2026 WL 448807, at *7. Therefore, the proper venue to bring Aviles's claim for relief from third-country removal is the Third Circuit Court of Appeals, not the District Court. *See Nasrallah*, 590 U.S. at 579; 8 U.S.C. § 1252(b)(2), (9). Accordingly, Aviles's requests for an injunction and RFI are **DENIED** for lack of jurisdiction.

B.    AVILES'S REMOVAL IS REASONABLY FORESEEABLE UNDER *ZADVYDAS*.

Aviles contends that his re-detention on December 23, 2025, violates the Due Process Clause of the Fifth Amendment and section 1231(a)(6) of the INA. (Doc. 1, at 11-12). Aviles

reasons that both the 90-day statutory removal period and six month presumptively reasonable period of detention to effectuate removal expired nearly a decade ago and that his two periods in ICE detention post-order of removal should be considered in aggregate. (Doc. 1, ¶ 45). Aviles also reasons that there is not a significant likelihood of his removal in the reasonably foreseeable future because the government provides no evidence to support that third-country removal is practicable or legally permissible. (Doc. 1, ¶ 48). The government counters that Aviles has been re-detained for less than six months, making his detention presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). (Doc. 6, at 20). The government also avers that detention is reasonable because Aviles failed to submit non-speculative indications that his removal is not reasonably foreseeable. (Doc. 6, at 22).

Habeas actions based on whether a petitioner is subject to unreasonably lengthy detention, unrelated to the purpose of effectuating removal, remain in the jurisdiction of district courts. *Kahlil, 164 F.4th at 277-79* (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas*, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long and unrelated to the purpose of effectuating removal is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil, 164 F.4th at 278-79* (finding that length of confinement claims "does not get

channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Aviles's detention after his order of removal became final has become unconstitutionally prolonged and unrelated to the purpose of effectuating his removal. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79; *Zadvydas*, 533 U.S. at 688.

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumptively reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Courts in the Third Circuit have found that a petitioner's conclusory statements that removal is not reasonably

10

foreseeable are insufficient to provide good reason to believe removal is not imminent. *Alexander v. Att'y Gen. U.S.*, 495 F. App'x 274, 277 (3d Cir. 2012); *Barenboy v. Att'y Gen U.S.*, 160 Fed. App'x 258, 260-61 n.2 (3d Cir. 2005); *Boateng v. Lynch*, No. 3:CV-16-1925, 2017 WL 2345620, at *4 (M.D. Pa. May 30, 2017). As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable. *Zadvydas*, 533 U.S. at 699-700.

Neither the Supreme Court nor the Third Circuit have definitively ruled on whether nonconsecutive detention periods may be aggregated. *Lam v. Noem*, No. 3:25-CV-00397, 2026 WL 492383 at * 5 (W.D. Pa. February 23, 2026). However, if the detention periods were not cumulative, "the government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, at 855-56 (S.D. Tex. 2025) (collecting multiple cases in which courts across the country have held that prior detentions count towards the six-month period under *Zadvydas*). To allow the presumptively reasonable detention period to restart after every re-detainment could seriously undercut the holding of *Zadvydas*. *Abuelhawa*, 811 F. Supp. 3d at 855-56 (collecting cases). Even if the period of detention post-order of removal is not considered in the aggregate, courts in the Third Circuit have found that the six month presumptively reasonable detention period is a rebuttable presumption if a petitioner can prove that his removal is not reasonably foreseeable. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397-98 (D.N.J. 2025); *Cahuex v. Noem*, No 26-CV-02339, 2026 WL 745297, at *2 (D.N.J. March 17, 2026) (collecting cases); *Lam*, 2026 WL 492383 at * 5; *Roe v. Oddo*, No. 3:25-CV-128, 2025 WL 3030692, at *6 (W.D. Pa. Oct. 30, 2025).

After an IJ ordered his removal, Aviles was initially detained for just over eleven months, from May 5, 2015, until April 6, 2016. (Doc 1, ¶¶ 31, 33). After ICE arrested Aviles at a check-in appointment on December 23, 2025, Aviles has been re-detained for just over three months. (Doc. 1, ¶ 36). Aviles's initial detention alone exceeds the six month presumptively reasonable period to effectuate removal, and his cumulative fourteen months of detention post-order of removal is well over the six-month presumptively reasonable period of detention to effectuate removal. *Abuelhawa*, 811 F. Supp. 3d at 855-56 (collecting cases); *see Zadvydas*, 533 U.S. at 701. However, the Court need not determine whether Aviles's petition is premature under *Zadvydas* because Aviles fails to provide good reason to believe that the government will not be able to effectuate removal in the reasonably foreseeable future.

The only support Aviles provides to show that there is no significant likelihood of removal in the reasonably foreseeable future are conclusory statements that the government cannot establish that Aviles will be removed in the reasonably foreseeable future (Doc. 1, ¶¶ 42, 48-50) and copies of Aviles's expired employment authorizations. (Doc. 1-3). Aviles's conclusory statements that the government has not provided a factual basis to believe Aviles's removal is practicable or reasonably foreseeable is not sufficient to provide a good showing that removal is not reasonably foreseeable. *See Alexander*, 495 F. App'x at 277 (finding petitioner's argument that the government had not provided a reasonable basis to continue to detain him was not enough to show that removal was unlikely in the foreseeable future); *see Barenboy*, 160 Fed. App'x at 260-61 n.2 (finding the burden is on the petitioner to show why removal is not reasonably foreseeable and that assertions that removal is unlikely in the foreseeable future without substantiation is not a sufficient showing); *see Boateng*, 2017 WL 2345620, at *4 (finding petitioner failed to provide good reason to believe removal was likely

in the reasonably foreseeable future with the conclusory statement that he "believes there is not significant likelihood of his removal in the reasonably foreseeable future").

Aviles's expired employment authorizations are likewise not sufficient evidence to show good reason that there is a significant likelihood of removal in the reasonably foreseeable future. Aviles reasons that when the government issued the employment authorizations, pursuant to 8 U.S.C. § 1231(a)(7), it had to first determine that Aviles could not be removed either because all countries refused to receive him or because removal was otherwise impracticable. (Doc. 1, ¶ 35). While pursuant to § 1231(a)(7), it was presumably impracticable to remove Aviles from the United States, Aviles's most recent employment authorization expired on December 17, 2025, six days before ICE revoked Aviles's order of supervision and detained him. (Doc. 1-3, at 1; Doc 1, ¶ 36). In re-detaining Aviles, the government provided him with a notice of third-country removal to Mexico, which indicates that Aviles's removal is now practicable. (Doc. 1-4). In providing only conclusory statements and expired employment authorizations, Aviles fails to show good reason why his removal is not significantly likely in the reasonably foreseeable future. If Aviles's period of confinement continues to a point where removal in the reasonably foreseeable future becomes suspect or new evidence arises showing that removal is not significantly likely in the reasonably foreseeable future, Aviles may file another habeas petition with the Court. *See Zadvydas*, 533 U.S. at 701 (finding that as the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks). Accordingly, Aviles's claim for relief from detention under *Zadvydas* is **DENIED without prejudice**.

## IV.    CONCLUSION

For the foregoing reasons, Aviles's petition for writ of habeas corpus is **DENIED**. (Doc. 1). Aviles's requests for an injunction and RFI are **DENIED** for lack of jurisdiction, and Aviles's claim for relief from detention under *Zadvydas* is **DENIED without prejudice**.

An appropriate Order follows.

**BY THE COURT:**

**Dated: May 22, 2026**                    */s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States District Judge**